**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| **CHAD W MILLER** | ) | |
| **SARAH B MILLER,** | ) | **CASE NO. 05-74341** |
| | ) | |
| **Debtors.** | ) | **CHAPTER 13** |

### MEMORANDUM DECISION

The matter before the Court is the proposed entry of a consent order resolving the Motion for Valuation filed on December 22, 2005 by the Debtors to determine the value of a 2004 Pontiac Aztek upon which GMAC, which financed the purchase of the vehicle for the Debtors, has a security interest.[1] The proposed consent order provides that the Debtors wish to retain possession of the vehicle, values the vehicle at $13,500.00 and determines that the Debtors owe GMAC $18,956.58. Furthermore, the proposed order provides that GMAC is allowed a secured claim in the amount of $13,500.00 plus 7% interest, an unsecured claim in the amount of $5,456.58 and an additional unsecured claim in the amount of $425.00 on account of attorneys' fees and cost of collection. The Court requested GMAC's counsel to provide the basis for allowing an unsecured claim for post-petition attorneys' fees and collection costs when the collateral does not have sufficient value to permit its recovery pursuant to 11 U.S.C. § 506(b).[2]

---

[1] The Debtors filed their petition on October 6, 2005 and therefore this case is controlled by the law in effect prior to the adoption of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA).

[2] Pursuant to 11 U.S.C. § 506(a), GMAC has a secured claim in the amount of $13,500.00 and an unsecured claim in the amount of $5,456.58; thus the Court does not take issue with these provisions of the proposed order.

In response to the Court's inquiry, GMAC's counsel cited *In re United Merchants & Manufacturers, Inc.,* 674 F.2d 134 (2nd Cir. 1982) in support of allowing an unsecured claim for attorneys' fees in favor of an unsecured or undersecured creditor. Counsel also noted that courts have come to the opposite conclusion, namely United States Bankruptcy Court Judge Anderson of the Western District of Virginia in *In re Saunders,* 130 B.R. 208 (Bankr. W.D. Va. 1991). After due consideration of the facts and circumstances of this case and the applicable law, the Court concludes that the proposed consent order should not be entered.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this proceeding by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on July 24, 1984.  Determination of the value of property of the estate which is subject to a creditor's security interest is a "core" bankruptcy proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (L).

An appropriate question to be addressed at this point is the Court rasing sua sponte an issue when the parties in interest have agreed to the Debtors' payments of the proposed fee.  Certainly, it is this Court's belief that an agreement reached among the parties in interest is generally superior and more satisfactory to them than one which is decided for them.  The Court wishes to encourage settlements rather than discourage them.  This Court also believes, however, that is has an independent duty not to approve settlements which it believes to be contrary to pertinent provisions of the Bankruptcy Code.  More importantly, the District Court of this District has so held with specific reference to confirmation of Chapter 13 plans. *United States v. Easley,* 216 B.R. 543, 544 n. 1 (W.D. Va. 1997) ("The Bankruptcy Court is under an

2

independent duty to verify that a Chapter 13 plan does in fact comply with the law, irrespective of the lack of an objection by creditors or the Chapter 13 trustee."). More fundamentally, the parties to the proposed consent order do not comprise all of the parties in interest affected by its provisions. To allow one creditor to recover a pro rata portion of its post-petition attorneys' fees would adversely affect the percentage of distribution to all other creditors not so favored. In the case before the Court the Debtors' Chapter 13 plan confirmed by order entered April 4, 2006 provides for a projected distribution of "at least 30% on claims filed and allowed." The Debtors are to make sixty (60) payments of $764.00 each month to the Trustee. From this aggregate sum will be paid GMAC's secured $13,500.00 claim with 7% interest, the administrative expenses of the case, and the balance to the unsecured claims. To permit GMAC to have an allowed claim for not only its petition-date unsecured claim but also its post-petition legal expenses will permit GMAC to obtain a greater percentage distribution upon its petition-date unsecured claim than will be the case for the petition-date amounts of all other unsecured claims. While the Chapter 13 Trustee does act on behalf of the unsecured creditors, the Court's attention has not been directed to any provision of the Bankruptcy Code which would authorize her to subordinate the rights of more passive holders of unsecured claims in favor of the more aggressive assertions of rights by other holders of such claims.

11 U.S.C. § 506(a) provides for both a secured and an unsecured claim of a debt secured by collateral with a value less than the debt.

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

11 U.S.C. § 506(a). Here, GMAC is undersecured as the parties have agreed that the Debtors owe GMAC $18,956.58 on a debt secured by a vehicle valued at $13,500.00. Pursuant to section 506(a), the Court concludes that GMAC has a secured claim in the amount of $13,500.00 and an unsecured claim in the amount of $5,456.58.

The only section of the Bankruptcy Code that expressly authorizes any creditor to be paid attorneys' fees as part of a claim is 11 U.S.C. § 506(b), which provides that:

> [t]o the extent that an allowed secured claim is secured by property the value of which, . . ., is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

This statutory provision expressly allows contractually authorized attorneys' fees for fully secured claims only. In *In re Saunders,* 130 B.R. 208, 210 (Bankr. W.D. Va. 1991), Judge Anderson reasoned that "[i]f attorneys' fees were allowable on the unsecured portion of a debt, there would be no need for [11 U.S.C. § 506(b)]. If Congress had intended for the holders of both secured claims and unsecured claims to recover attorneys' fees, it could have easily said so. But it did not."

Judge Anderson recognized a split of authority regarding whether a creditor can recover attorneys' fees on an unsecured or undersecured claim. *See id.* at 210-11. He noted that *In re United Merchants & Manufacturers, Inc.,* 674 F.2d 134 (2nd Cir. 1982) is the primary authority cited by courts holding that an undersecured or unsecured creditor can recover contractual attorneys' fees. *Id.* at 211 (citing *Liberty Nat'l Bank & Trust v. George,* 70 B.R. 312, 316-17 (W.D. Ky. 1987) and *In re Ladycliff College,* 46 B.R. 141, 143 (Bankr. S.D.N.Y. 1985)). Although the *United Merchants* court concluded that 11 U.S.C. § 506(b) "merely codifies pre-

Code law that an *oversecured* credit can assert, *as part of its secured claim*, its right to interest and costs arising under its credit agreement", the case was governed by and decided under the Bankruptcy Act. *United Merchants,* 674 F.2d at 138.  Judge Anderson disagreed with the *United Merchants* court's conclusion concerning §506(b) finding it inconsistent with his interpretation of §506(a) and (b) when the sections are read together and chose to follow the reasoning set forth in *In re Sakowitz,* 110 B.R. 268 (Bankr. S.D. Tex. 1989). *In re Saunders,* 130 B.R. at 211.

This Court has reviewed and considered the analysis of this issue presented in a Comment[3] cited by GMAC's counsel which was written subsequent to Judge Anderson's opinion.  That analysis rejects the reasoning of the *Sakowitz* decision followed by Judge Anderson and supports that of the Second Circuit in the *United Merchants* case.  The Comment's author's approach may be summarized as follows: section 506 only applies to secured claims, not whether attorneys' fees can be included in unsecured claims; section 502 expressly provides for disallowance of unsecured claims to the extent that they seek "unmatured interest", but does not mention attorneys' fees; therefore, claims for post-petition attorneys' fees must be allowable. This Court is not impressed with this reasoning for the following reasons:

1. It glosses over the language of section 502(b) that the amount allowed on a claim is "the amount of such claim as of the date of the filing of the petition".  Just applying the plain words of the statute to the issue compels a conclusion that a creditor's legal expense incurred <u>after</u> the filing date cannot be part of the debt owing on the filing date.

2.  The express reference to disallowing a claim for "unmatured interest", which

---

[3] Ray Geoffroy, Comment, *Show Me the Money: The Debate over Creditors' Postpetition Attorneys' Fees*, 14 Bankr. Dev. J. 425 (1998).

5

on first impression might be unnecessary in view of the express command to determine the debt owing on the petition date, in fact is explainable on another ground, a fact not mentioned in the Comment and perhaps not recognized by the author.  While the more common type of debt obligation is one which provides a promise to pay a stipulated sum of principal plus interest thereon at an agreed rate until date of payment, it is by no means the exclusive type of loan agreement reached between lenders and borrowers.  Some obligations include the interest to accrue during the entire contractual term of the loan as part of the total amount of the note.  For example, a loan of $50,000.00 principal to be repaid in five years with interest at 10% per annum could result in a total amount set out in the note of $75,000.00 payable five years from date.  If a bankruptcy were to occur two years out with no payment having been made, the question would arise as to how much is owed at that time, $75,000.00 or $60,000.00.  In the absence of a controlling express provision in the federal Bankruptcy Code, such question would be governed by applicable state law.  In the absence of an express right to prepay the loan before its agreed maturity, the borrower may have no such right, at least in the sense of any right to avoid the payment of unmatured interest.  In fact the general rule is that a creditor's collection of all interest which would accrue to maturity upon the borrower's voluntary prepayment of the debt does not render the interest usurious even if a note providing for that amount of interest to the actual date of payment would have been usurious. *See* 45 Am. Jur. 2d *Interest and Usury* § 173, at 147-48 (1999).  There are conflicting lines of authority as to whether the creditor's collection of all interest which would accrue to the contractual  maturity of the note upon the acceleration of the maturity arising from the borrower's default can make the contract usurious. *See id.* § 172, at 146-47.  In summary, in the absence of the express provision contained in § 502(b)(2)

disallowing claims for "unmatured interest", bankruptcy courts would be compelled to determine innumerable disputes as to whether under applicable state law the amount which the creditor could demand as its legal due on the petition date would or would not included interest which would otherwise accrue between that date and the agreed contractual maturity of the obligation. The Court is not aware of any similar issue regarding yet-to-be-incurred legal expenses. Accordingly, there was a clear need to include in section 502 an express disallowance of a claim to the extent that it included "unmatured interest" as of the petition date, but no corresponding reason to make a similar provision for post-petition legal fees or other costs which the creditor might incur in connection with the debt.

       3. Finally, in this Court's view, the rationale contained in the Comment fails to recognize that the language of section 506(b) providing for post-petition protection of interest and expenses when the value of the collateral is sufficient to cover them is an express exception to the general rule of section 502(b) that the creditor's claim is to be determined as of the petition date. That exception is due, at least in substantial part if not entirely, to the exceedingly good reason that to deny a secured creditor the benefit of its contract when it has obtained security adequate to assure such contract's performance would implicate the secured creditor's constitutional property rights. Such considerations are not present with respect to creditors who have not obtained such security.

       This Court concludes that Judge Anderson's decision is consistent with its own interpretation of sections 502 and 506 and, therefore, will follow his precedent as set forth in *In re Saunders,* 130 B.R. 208 (Bankr. W.D. Va. 1991). Accordingly, an undersecured or unsecured creditor cannot properly be allowed an unsecured claim against the bankruptcy estate for post-

petition contractual attorneys' fees.  The Court will enter the proposed consent order after revising it to reflect that GMAC is not allowed an unsecured claim in the amount of $425.00 on account of attorneys' fees and cost of collection.

        This 28th day of April, 2006.

_____
UNITED STATES BANKRUPTCY JUDGE